```
              IN THE UNITED STATES DISTRICT COURT
             FOR THE WESTERN DISTRICT OF TENNESSEE
                         WESTERN DIVISION
```

| | |
|---|---|
| ELMER MERAZ,                         )<br>                                      )<br>     Plaintiff,                      )<br>                                      )<br>v.                                    )     No. 11-2812<br>                                      )<br>EL CHARRO BILLIARDS, LLC, et         )<br>al.,                                  )<br>                                      )<br>     Defendants.                     )  | |

**ORDER GRANTING MOTION FOR PARTIAL SUMMARY JUDGMENT**

Before the Court is Plaintiff Elmer Meraz's ("Meraz") May 30, 2013 Motion for Partial Summary Judgment (the "Motion") on the issue of Defendant El Charro Billiards, LLC's ("El Charro") liability for negligence. (Mot. for Par. Summ. J., ECF No. 81.) El Charro has not responded. For the following reasons, Meraz's Motion for Partial Summary Judgment is GRANTED.

**I.   Background**

All facts are taken from Meraz's Statement of Undisputed Facts unless otherwise stated. (Statement of Undisp. Facts, ECF No. 81-1.) On September 19, 2010, Meraz intervened in a verbal altercation at El Charro between Abel Mediano ("Mediano"), Meraz's cousin and companion for the evening, and Santiago Lopez ("Lopez"), a known trouble maker and regular customer of El Charro. (Id. ¶¶ 4-6.) El Charro's security told the three of

them to leave.  (Id ¶ 7.)  When Meraz walked outside the bar with Lopez, Lopez pulled a gun and shot Meraz six times.  (Id. at ¶ 8.)

El Charro regularly permitted a variety of "gang activity" on its premises, including drug sales, drug use, fights between customers, violent assaults on passersby, and multiple shootings at the bar and adjoining parking lot.  (Id. ¶¶ 13-17, 19.)  Lopez was a regular customer who started fights with other customers "every time" he was there.  (Id. ¶ 9.)  Before the shooting, Lopez had "harassed [other] patrons" with guns inside the bar.  (Id. ¶¶ 9, 12.)  Lopez was regularly ejected, but the bar's staff, which included two of Lopez's sisters, "would always let [him] back in."  (Id. ¶¶ 11, 19.)

The management of El Charro did not have any written policies, procedures, or guidelines about the function of its security guards.  (Id. ¶ 19.)  Management did not communicate to security guards the identity of patrons who had been ejected or banned.  (Id. ¶ 20.)  Security staffing included guards with no documented experience in the security industry and no prior training or experience at the bar.  (Id. ¶¶ 19, 20.)  There is no evidence of a formal training program for any of the staff about the proper service of alcohol and the handling of intoxicated and violent guests.  (Id. ¶ 21.)

On September 19, 2010, Pedro Mendoza ("Mendoza") was the security person on duty. (Id. ¶ 20.) Mendoza was at the front door and was responsible for screening in-coming patrons and searching them for weapons. (Id.) Mendoza was aware of Lopez's dangerous and violent reputation. (Id.) When Lopez arrived, Mendoza allowed him to enter and did not pat him down or otherwise search him for weapons. (Id.)

The same evening, Meraz went to El Charro with his cousin, Mediano. (Id. ¶¶ 1, 3). Meraz had been to the bar twice before, but had not previously met Lopez. (Id. ¶ 2.) At some point in the evening, Lopez and Mediano became entangled in a verbal altercation, and Meraz intervened by standing between them. (Id. ¶ 6.) Security instructed all three of them to leave. (Id. ¶ 7.) When Meraz walked outside with Lopez, Lopez "pulled a gun and shot [Meraz] six times." (Id. ¶ 8.)

**II.  Jurisdiction**

This Court has diversity jurisdiction under 28 U.S.C § 1332. District courts have "jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between...citizens of different states." 28 U.S.C § 1332(a)(1). The Plaintiff, Meraz, is a resident of Mississippi. (Compl., ECF No. 1 ¶ 2.) The Defendant, El Charro, is a Tennessee limited liability company with its principal place of business

3

in Memphis, Tennessee.  (Id. ¶ 3.)  Meraz has alleged $1,870,353 in damages.  (Id. ¶ 31.)  The parties are completely diverse, and the amount in controversy requirement is satisfied.

### III. Choice of Law

In diversity actions, federal courts apply state substantive law.  Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938).  To determine the appropriate state law, a federal district court applies the "choice of law" rules of the state in which it sits.  Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941); Montgomery v. Wyeth, 580 F.3d 455, 459 (6th Cir. 2009) (citation omitted).

For tort claims, Tennessee follows the "most significant relationship" rule, which provides that "the law of the state where the injury occurred will be applied unless some other state has a more significant relationship to the litigation." Hicks v. Lewis, 148 S.W.3d 80, 86 (Tenn. Ct. App. 2003) (quoting Hataway v. McKinley, 830 S.W.2d 53, 59 (Tenn. 1992)).  The injuries alleged here occurred in Tennessee, Meraz contends that Tennessee law should apply, and El Charro has not argued that any other state has a more significant relationship to the litigation.  The Court will apply Tennessee substantive law.

### IV.  Standard of Review

Under Federal Rule of Civil Procedure 56, on motion of a party, the court "shall grant summary judgment if the movant

4

shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The moving party can meet this burden by pointing out to the court that the non-moving party, having had sufficient opportunity for discovery, has no evidence to support an essential element of its case.  See Fed. R. Civ. P. 56(c)(1); Asbury v. Teodosio, 412 F. Appx. 786, 791 (6th Cir. 2011) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)).

When confronted with a properly supported motion for summary judgment, the non-moving party must set forth specific facts showing that there is a genuine dispute for trial.  See Fed. R. Civ. P. 56(c).  A genuine dispute for trial exists if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  See Wasek v. Arrow Energy Servs., 682 F.3d 463, 467 (6th Cir. 2012) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  The non-moving party must "'do more than simply show that there is some metaphysical doubt as to the material facts.'"  Phelps v. State Farm Mut. Auto. Ins. Co., 680 F.3d 725, 735 (6th Cir. 2012) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)).  A party may not oppose a properly supported summary judgment motion by mere reliance on the pleadings.  See Beckett v. Ford, 384 Fed. Appx. 435, 443 (6th Cir. 2010) (citing Celotex Corp., 477 U.S. at 324).  Instead,

5

the non-moving party "must adduce concrete evidence on which a reasonable juror could return a verdict in [its] favor." Stalbosky v. Belew, 205 F.3d 890, 895 (6th Cir. 2000) (citations omitted); see Fed. R. Civ. P. 56(c)(1).  The court does not have the duty to search the record for such evidence.  See Fed. R. Civ. P. 56(c)(3); InterRoyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989).  The non-moving party has the duty to point out specific evidence in the record that would be sufficient to justify a jury decision in its favor.  See Fed. R. Civ. P. 56(c)(1); InterRoyal Corp., 889 F.2d at 111.

Although summary judgment must be used carefully, it "is an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action[,] rather than a disfavored procedural shortcut."  FDIC v. Jeff Miller Stables, 573 F.3d 289, 294 (6th Cir. 2009) (internal quotation marks and citations omitted).

The local rules of this district establish specific requirements that must be satisfied by the non-moving party. The party opposing summary judgment must respond to each fact set forth by the moving party by agreeing that it is undisputed, agreeing that it is undisputed for purposes of ruling on the summary judgment motion only, or by demonstrating that the fact is disputed.  W.D. Tenn. L.R. 56.1 (b).  The non-moving party

6

must make specific citations to the record to support each contention that a particular fact is in dispute. Id. The non-moving party's failure to respond as required to the moving party's statement of material facts "shall indicate that the asserted facts are not disputed for purposes of summary judgment." W.D. Tenn. L.R. 56.1(d).

El Charro has failed to respond to the Motion and the time to do so has passed. W.D. Tenn. L.R. 56.1(b). The facts asserted in Meraz's Statement of Undisputed Facts are taken as true for purposes of this Motion.

**V. Analysis**

Meraz argues that El Charro had a duty to take reasonable steps to protect him from danger that was foreseeable as a result of past criminal acts in and around El Charro. (Mot. for Par. Summ. J., ECF No. 81-2 at 4-5.) Meraz argues that El Charro was on notice of "rampant" criminal and gang activity inside El Charro, multiple shootings at El Charro and the adjoining parking lot, and Lopez's past violent behavior. (Id. at 4-6.) Meraz argues that, by allowing "open and notorious criminal activity to take place [on] its premises, and . . . condon[ing] . . . the criminal activity of Santiago Lopez," El Charro breached its duty of care and caused Meraz's injuries. (Id. at 6.)

**A. Negligence Standard**

7

To establish a "prima facie claim of negligence," a plaintiff must establish "'(1) a duty of care owed by defendant to plaintiff; (2) conduct below the applicable standard of care that amounts to a breach of that duty; (3) an injury or loss; (4) cause in fact; and (5) proximate, or legal, cause.'" Morrison v. Allen, 338 S.W.3d 417, 437 (Tenn. 2011) (quoting Giggers v. Memphis Housing Auth., 277 S.W.3d 359, 364 (Tenn. 2009)).

"To determine whether a particular defendant owes a duty of care to a particular plaintiff, [courts] balance the foreseeability and gravity of the potential harm against the feasibility and availability of alternatives that would have prevented the harm." Hale v. Ostrow, 166 S.W.3d 713, 716 (Tenn. 2005). The "'foreseeability prong is paramount because foreseeability is the test of negligence.'" Id. at 716-17 (quoting Biscan v. Brown, 160 S.W.3d 462, 480 (Tenn. 2005) (internal quotations omitted)). "[F]oreseeability alone 'is not, in and of itself sufficient to create a duty' . . . . Rather when a minimum threshold of foreseeability is established, courts must engage in 'an analysis of the relevant public policy considerations' to determine whether a duty enforceable in tort must be imposed." Giggers, 277 S.W.3d at 365-66 (quoting Satterfield v. Breeding Insulation Co., 266 S.W.3d 347, 364-66 (Tenn. 2008)).

8

In a negligence action, "the standard of conduct is always the same. It is a standard of reasonable care in light of the apparent risk." McCall v. Wilder, 913 S.W.2d 150, 153 (Tenn. 1995). "If a defendant fails to exercise reasonable care under the circumstances, then he or she has breached his or her duty to the plaintiffs." West v. East Tenn. Pioneer Oil Co., 172 S.W.3d 545, 550 (Tenn. 2005). "Reasonable care is to be determined by the risk entailed through probable dangers attending the particular situation and is to be commensurate with the risk of injury." Id.

"'Causation [in fact] and proximate cause are distinct elements of negligence, and both must be proven by the plaintiff by a preponderance of the evidence.'" Hale, 166 S.W.3d at 718 (quoting Kilpatrick v. Bryant, 868 S.W.2d 594, 598 (Tenn. 1993)). Both types of causation are "'ordinarily jury questions[] unless the uncontroverted facts and inferences to be drawn from them make it so clear that all reasonable persons must agree on the proper outcome.'" Id. (quoting Haynes v. Hamilton County, 883 S.W.2d 606, 612 (Tenn. 1994)). A plaintiff establishes cause in fact when "as a factual matter [defendant's conduct] directly contributed to the plaintiff's injury...[and] the plaintiff's injury would [not] have happened 'but for' the defendant's act." Id. Proximate cause is determined by a three-pronged test:

> (1) the tortfeasor's conduct must have been a 'substantial factor' in bringing about the harm being complained of; and (2) there is no rule or policy that should relieve the wrongdoer from liability because of the manner in which the negligence has resulted in the harm; and (3) the harm giving rise to the action could have reasonably been foreseen or anticipated by a person of ordinary intelligence and prudence.

Id. (quoting Haynes, 883 S.W.2d at 612).

### B. Premises Liability

Under a premises liability theory of negligence, merchants may be held liable for injuries caused by a dangerous condition on the premises. See Blair v. West Town Mall, 130 S.W.3d 761, 764 (Tenn. 2004). Because "[l]iability in premises liability cases stems from superior knowledge of the condition of the premises," a plaintiff must:

> prove in addition to the elements of negligence, that: (1) the condition was caused or created by the owner, operator, or his agent, or (2) if the condition was created by someone other than the owner, operator, or his agent, that the owner or operator had actual or constructive notice that the condition existed prior to the accident.

Blair, 130 S.W.3d at 764 (internal quotations omitted).

The duty to protect invitees from harm resulting from a dangerous condition includes an obligation to "take reasonable measures to protect [] customers from foreseeable criminal attacks." McClung v. Delta Square Ltd. P'ship, 937 S.W.2d 891, 899 (Tenn. 1996). A duty:

> to take reasonable steps to protect customers arises if the business knows, or has reason to know, either from what has been or should have been observed or from past experience,

10

>  that criminal acts against its customers on its premises are reasonably foreseeable, either generally or at some particular time.

McClung, 937 S.W.2d at 902.  As with the regular negligence standard, the burden imposed on a merchant must be balanced with the foreseeability and gravity of the potential harm to customers.  Id.  "In cases in which there is a high degree of foreseeability of harm and the probable harm is great, the burden imposed upon defendant may be substantial."  Id.

In McClung, the plaintiff was abducted from a shopping mall parking lot.  Id. at 894.  The court held that the "numerous reports of crime on or near defendants' premises" in the seventeen months before the abduction made the risk of harm to defendant's customers foreseeable.  Id. at 904.  The court remanded on the question of the degree of the burden this duty imposed, instructing the lower court not to impose a burden that "outweighs the foreseeability and gravity of the possible harm."  Id.

The McClung standard does not strictly limit liability to injuries that take place on a defendant's property.  See, e.g., Estes v. Peels, No. EE199900582COAR3CV, 2000 WL 1424808, at *5 (Tenn. Ct. App. Sept. 21, 2000).  In Estes, the court held that there are instances in which a landowner has a duty "to protect [a] plaintiff *from an [injury] that occurred off the premises.*"

11

Id. (emphasis in original); see also Helton v. Glenn Enterprises, Inc., 209 S.W.3d 619, 627 (Tenn. Ct. App. 2006) (holding that a motel had a duty to prevent reasonably foreseeable thefts of automobiles in an adjacent parking lot that the motel led patrons to believe was on motel property). A court must determine, "using the balancing approach set forth in [McClung], whether some condition on [a defendant's] property created an unreasonable risk of harm to the plaintiff despite [the] lack of contact" with the defendant's property at the point of injury. Estes, 2000 WL 1424808 at *6.

### C. El Charro's Negligence

El Charro had a duty to take reasonable steps to protect Meraz from foreseeable criminal attacks. See McClung, 937 S.W.2d at 899. El Charro had specific knowledge of dangerous conditions on the premises, such as open gang activity, the sale and use of drugs, numerous fights between customers, violent assaults on passersby, multiple shootings at the bar and adjoining parking lot, and Lopez's consistently violent history. (See Statement of Undisp. Facts, ECF No. 81-1 ¶¶ 9, 11, 13-17, 19.) El Charro had actual notice of Lopez's violent history, having ejected him from the bar numerous times for harassing customers with guns and instigating fights. (Id. ¶¶ 9, 12.) Because there "was a high degree of foreseeability of harm and the probable harm [was] great" as a result of the dangerous

conditions at El Charro, El Charro's burden those "substantial." McClung, 937 S.W.2d at 902.  That substantial burden required, at the very least, maintaining a competent security staff and ensuring that known violent customers would not be allowed into the bar while armed with guns.  The degree of harm foreseeable from failing to implement those basic security measures outweighed any burden those measures would impose on El Charro.  See McClung, 937 S.W.2d at 904.  El Charro's duty to Meraz did not disappear when El Charro ejected Meraz and Lopez from the bar because it was foreseeable that Meraz would be subject to harm as a result of El Charro's failure to secure the premises adequately.  See Estes, 2000 WL 1424808 at *6.

Based on the undisputed facts, no reasonable jury could find that El Charro met its standard of care.  See Wasek, 682 F.3d at 467.  El Charro allowed gang activity to continue inside the bar.  (See Statement of Undisp. Facts, ECF No. 81-1 ¶¶ 13-17, 19.)  It did not establish policies preventing violent customers from returning to the bar.  (See Id. ¶ 19.)  Security guards did not have adequate training or experience.  (Id. ¶¶ 19, 20.)  On the evening of the attack, Mendoza, the security guard on duty, allowed Lopez to enter the bar without searching him for weapons, despite Mendoza's knowledge of Lopez's previous violence toward customers.  (Id.)

13

El Charro's failure to take reasonable steps to protect Meraz actually and proximately caused Meraz's injuries. Moments after being ejected from El Charro, Lopez shot Meraz six times. (Id. ¶ 8.) Meraz would not have been shot "but for" El Charro's allowing an armed Lopez into the bar, a result of El Charro's failure to maintain reasonable security procedures and employ competent security guards. See Hale, 166 S.W.3d at 718. El Charro's breach of duty also proximately caused Meraz's injuries. El Charro's failure to prevent Lopez from entering the bar, or search him for weapons, was a "substantial factor" in Lopez's shooting Meraz immediately after both were ejected. See Id. at 719. No rule or policy favors relieving El Charro of liability. See Id. The harm to Meraz was reasonably foreseeable given the gang activity in the bar and Lopez's history of violence. See Id.

## VI. Conclusion

For the foregoing reasons, no reasonable jury could find that El Charro is not liable to Meraz for negligence, and Meraz's Motion for Partial Summary judgment on the issue of negligence is GRANTED.

So ordered this 10th day of October, 2013.

s/ Samuel H. Mays, Jr.
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE